Good morning, Council. Good morning, Your Honor. A continuation of our virtual oral arguments. Maybe one day we can meet in New Orleans again, but I wouldn't put it on your calendar quite yet. We have three cases today, and the first one is United States v. Wiley Phillips. Mr. Cofer, it looks like you get to go first. Thank you, Your Honor. May it please the Court, Council, my name is Cody Cofer. I represent appellant Wiley Landon Phillips. Because the district court treated the methamphetamine importation enhancement as mandatory, the court should reverse and remand this case for a new the district court was unaware of its authority to have a policy disagreement and disregard the guideline, or two, the district court intentionally disregarded Kimbrough and Spears and treated the guideline as mandatory. In either instance, it does not pass constitutional muster. Mandatory guidelines violate the Sixth Amendment and undermine individualized sentencing under 3553A. How do we know that the district court was unaware of its authority? Well, one, it said so, and two, it did not address the merits of Mr. Phillips' variance argument. Quote the sentence by the district court. I've read the sentencing hearing, and I don't recall one where he said, I'm not able to, I'm unaware of my ability or authority to vary from the guidelines. Which exact statement, upon which exact statement are you relying? I'm relying on several statements, but one of the most explicit was the court saying it is not his role to disagree with the guidelines. And that's actually, when Mr. Phillips starts his variance argument, the district court says, who am I to question the United States Sentencing Commission? Mr. Phillips turns to answer that question in earnest, directs the court to Booker, Kimbrough, and Gall, explains you have to calculate the guidelines, but you can disagree with them, make a finding that they're foolish, and assess the sentence that's appropriate in your own judgment. And then the district court expressed reservations that it would be reversed if it took such a course. And to address those concerns, Mr. Phillips used the example of a commonly applied variance in the Fort Worth division, the methamphetamine purity variance. And the district court recommits and says that he does not view it as his role to disagree with the guidelines, and asks rhetorically, isn't that stepping outside of my lane? Mr. Cooper, when you talk about a commonly applied variance in that district, is that what the reference to Terry Means is about? I'm not sure we interpret what the court meant by referring to Judge Means' position, and maybe we could read that to say he's not fully embracing it. I think that's clear enough. Whether he's rejecting it, I'm not so clear. But what do we make of that part of what Judge Pittman said? That is a reference to Judge Means in his practice to give a considerable variance based on the interpretation. Was the discussion right ahead of this in the transcript? Well, there are two references. Whenever Mr. Phillips is making the argument or using the example of purity, the district court, the immediate response is, I know what Judge Means does and distinguishes himself from Judge Means on that occasion and another. You can move on. Well, at page 13 of the sentencing transcript, the lawyer for Mr. Phillips, did you represent Mr. Phillips in sentencing, Mr. Cooper? Yes, Your Honor. Yes. I see your name now. And so, Your Honor, I would ask the court in consideration of Mr. Phillips' mitigating factors, and I understand the court is not inclined to take away the levels for the importation. I understand the court is not inclined to take away the levels for the importation. When I read that, I thought, well, you recognize he knows he has the authority to do that, but he's just not inclined to do that. So, how do you explain your statement? The word inclined. Well, Your Honor, my hope up until or what's expressed on the record, up until the very end of sentencing, one of the last things that Mr. Phillips objects to is the district court's treatment of the guideline is mandatory. And up until that last opportunity, the hope is that the court will recognize its error and correct it. Well, you don't say that. You don't say, Judge, these are not mandatory. You have the authority to do this. You said, I understand you're not, quote, inclined to take away the levels for the importation. In fairness to you, at your later comments after the court has imposed sentence, at page 24 of the transcript, you say, I also object to the court treating the guidelines as mandatory as it relates to the importation levels. I think you've got two inconsistent statements there for whatever that might be worth to our court. I understand what you're saying, Your Honor. And there's also the statement where I say that I acknowledge the court's philosophy and view. As a trial attorney, you're trying to persuade the judge. And Judge Pittman had made it very clear that he was done with the argument. At the beginning of the second day of the sentencing hearing, he instructed counsel not to push his luck. And so, you know, if I use gentler language, I think that's in response to the very clear communication from the district court. Although I agree that my language was not all that clear in saying that he had an inclination, but I believe the district court's language was very clear. The 28J letter that was, I'm sorry, Judge Graves. Go ahead. In the 28J letter, the government filed on 28 October, the government surprised me by making a statement referring to our decision in Madrid on 30 September said, and like Phillips, Madrid did not object or raise his argument in the district court. That prompted the court to apply a plain error review in Madrid. And if nothing else, I read this hearing transcript to note your objection, which I just read, among others, that you certainly did raise your objection in district court. And of course, I'll ask the government to respond to that. But I know that you apparently I don't have any response by you to the 28J. So this the government's apparent assertion that our standard review is plain errors come out of come out of left field. I agree, Your Honor. And all I can think the initial standard of review paragraph that was used in the government's brief in this case was copied and pasted from Madrid. And my expectation is that that letter is a form used in several cases raising the same issue. But I was just as surprised by the assertion as you as you have expressed, Your Honor. All right. Thank you. And Mr. Coffin, my only question you were explaining. I think you confess that some of your statements were not so clear. But after the court spoke about Judge Means, your response was, and I appreciate the court's view and philosophy, and I think it is appropriate. What did you mean by that? Well, I can tell you what I what I meant. But you can you can also see from the record, I'm acknowledging the district court's aversion to judicial activism. And but I go on to explain immediately after in the same breath. I begin with, however, and I explain how what I'm asking for is not inconsistent with the district court's view of judicial activism and its reluctance to to step away from the guidelines or step away from a directive of Congress. You know, it's it really is a reflection of my understanding that the district court did not fully understand the power to vary under Kimbrough and Spears. Whereas I think, in truth, the district court, based on its statements about Judge Means and the purity, I think the district court generally has an idea that the guidelines are advisory and that it has to consider sentencing arguments. But what was clear on this record is the district court did not understand that a policy disagreement could be the basis of setting aside a guideline and granting a variance either under Kimbrough or Spears. And those are the two arguments that Mr. Phillips was trying to get the court to consider and never reached the merits of those arguments because the district court kept throwing up the roadblock that I don't see it as my job to disagree with Congress or the United States Sentencing Commission. And we know that the district court didn't give consideration to the policy disagreement because it never addressed the merits of the argument. Mr. Phillips had his first argument, which was a Kimbrough variance, whereas a policy disagreement as it applies to this case and Mr. Phillips in the second argument he had was a Spears argument that in general this guideline should not be applied. The government never addressed the merits. The district court never addressed the merits. It just kept doubling down on I don't think that's my place to consider. And so the government had. But it's one thing to say it's not my place. Another to say I'm not I can't I'm not allowed to do that. He never said I'm not allowed to do it. He just said I don't want to get outside my lane. It's not my place. That, in effect, shows implied consideration that this is one I'm not going to vary from. Well, I would I would disagree that those state. I believe those statements show more a presumption of reasonableness applied by the district court and the statements of who am I and outside of my lane. I understand. But then then the district court expresses reservations about being reversed if it were to take that course of action and the district court relies on surface to support the decision not to consider the variance and surface is, of course, whether the guideline should apply in the calculation. And that's that's not a dispute that the guideline was properly applied in the calculation. But it's the second step evaluating that guideline under thirty five fifty three a where the district court just doesn't seem to get there. And the the government has asked for limited remand in this case. And in this case, I believe that to be the inappropriate remedy. The government has cited several cases and explanations for limited remand in the in all the cases where limited remand have been appropriate. The matter was fully litigated in the district court, and Mr Phillips did not have the benefit of fully litigating the variance arguments in the district court because the district judge communicated that he would not consider this species of variance. And so twice in the record, Mr Phillips indicates that. Okay, Judge, I hear what you're saying. I'm going to move on. You've made your intention clear and moves on to other sentencing matters. And so the if Mr Phillips has not made a part of the remand and the district court is not able to address the actual merits of the variance, Mr Phillips will not be getting the relief to which I believe he's entitled. Um, also, Your Honor's the, uh, the government has pointed to no indication that the district court would assess the same sentence for the same reasons. Uh, if the case were remanded, the district court does make reference to the criminal history of Mr Phillips and actually mirrors the four a 1.3 language for departure. And, of course, the court applied a departure. So the court is the district court was aware of its power to depart, and presumably it would have done that. But it did not change the sentence based on the criminal history of Mr Phillips. And so for these reasons, Mr Phillips asked that the court reverse and remand the case for new sentencing here. All right, Council, Mr McKay, let's see what you think of all this. May it please the court. Brian McKay on behalf of the United States. I would begin by addressing Judge Barksdale's concern and, frankly, a bit of embarrassment on my part, as Judge Barksdale had pointed out. The 28 J letter was submitted the day after Madrid was was decided, and I wish I had taken more time to review the record. But I would formally withdraw it if that clarifies things. But I think that regardless of the standard of review, affirmance is appropriate here. The parties have put forward two different interpretations of the district court statements at sentencing. Either the district court was aware of its authority that it could impose a sentence that didn't include the importation enhancement, but yet it thought that the sentencing commission was in a better position to state whether an importation enhancement was appropriate or not. Or the district court was saying that it felt bound, that it was mandated by Congress to impose a sentence that was higher because of the imported quality of the methamphetamine. And I think there are two aspects of this record in particular that show the former interpretation is the only is nothing in this record. No point did the court say, I feel bound, I feel limited in my authority by this particular enhancement or by the guidelines generally. To the contrary, the court acknowledged its understanding at sentencing in its statement of reasons and in the PSR, which it adopted, that it understood that the guidelines were our advisory only. And to Mr. Phillips's argument that the court implied that it would be, could be reversed if it didn't apply the enhancement, that is not what the district court said. And I would refer the court back to pages 68 and 69 of the record to be precise about what occurred there. When Mr. Phillips began advocating for a variance on this reason for disagreement with the guideline enhancement in particular, at that point, the court did step in and express its reluctance to do so. And it was at that point that defense counsel moved the conversation from this particular enhancement to the guidelines generally and holistically, assuring the court that it could say that as long as it had acknowledged the guidelines, it could say that it wholly disagreed with the guidelines and thought they're foolish as long as it acknowledged them. And that's the point at which the district court stepped in and expressed skepticism about that statement. And I think that skepticism is absolutely reasonable and appropriate. To my knowledge, this court hasn't been confronted by a case where a district court said, look, in my court, as a general matter, I think the guidelines are foolish. I disagree with them. And so I am going to acknowledge them, but I'm simply not going to follow them in my guideline. My sentences won't be based on the guidelines. Well, Mr. McKay, nothing quite that strong, but it does seem to me one way to read what Judge Piven was saying is a presumption of reasonableness in the guideline range and not an individualized assessment. What do you think? That's not the right way to view this. Certainly, Your Honor. I think that the more reasonable way to read it is the court is saying Congress compels that I consider the guidelines, not that I follow them, but that I consider them. And so I am considering them in a way that the Fifth Circuit has told me they are to be considered. Now, at the end of the day, that guideline range that is produced, ultimately the court is going to weigh under the 3553A factors and may determine in balance that the guideline range is higher than necessary to serve the goals of sentencing. But the court is simply, it's not saying I can't, I have to mechanically follow these guidelines and give a sentence that is within the guidelines. I don't believe it's saying that at all. It's, the court had said earlier, I think the court is talking about its choice and its view of its own role, its choice to show restraint in that respect. And I think that leads to the second point in this particular record, because I'm not the only one who believed it was that what the court was saying was reasonable and appropriate and saying, I can't just wholly jettison the guidelines. Because as the court pointed out, once the district court had explained what it perceived to be its role vis-a-vis the sentencing guidelines, that was met with explicit approval from defense counsel, who said it is both, I appreciate those views and I think that that is appropriate. Mr. McKay, I clearly understand we have to interpret what was going on at the sentencing hearing. I will say there is some reluctance for you, counsel, to tell us we said something stupid. And so maybe there's a way to move into convincing a judge he said something stupid without actually saying so. So I will give Mr. Coe for some benefit of the doubt that what followed his statement that was inappropriate must also be considered. And he did seem to take issue with what Judge Bittman had just said thereafter. Well, Your Honor, I believe what he said was, I think you're right in the role. And I think it would be perfectly reasonable for the district court to understand him to be saying, I understand and I appreciate what you're saying about your role and how you exercise your authority, but I am assuring you that you do have this authority. And the court, I think the record as a whole is showing that the court is simply saying, I'm not going to use my authority in that manner. And I would note that I think it's, you know, fair enough that counsel will get to have an opportunity to provide further meaning or explanation to what it said at sentencing. And I think that in fairness, it just strikes me as a little bit perhaps unfair to have, to allow him the opportunity to provide that at the same time he's advocating against giving the district court a comparable opportunity, if necessary, through a limited remand to do the same, to provide explanation and clarification of what it meant at the time of sentencing. Mr. McKay, were you at the sentencing hearing? I was not. No, Your Honor. Is there a role, I'm not saying reversible error or whatever, but isn't there a role for the Justice Department if the district court is not understanding the complications? Perhaps. And if it was evident that the district court had misunderstood, if the district court made those statements, and I'm contrasting against something like Gomez or Clay or Burns, where the court said, look, I perhaps might be willing to give you that relief, but I don't think I can. That's not what the court was saying. What the court was saying is, I hear your arguments. I understand the argument you're making. I just don't believe it is my role as I perceive my role as a judge to override the sentencing commission, which is in a better position to say whether a particular enhancement should or should not be made. So if the district court had clearly manifested a misunderstanding, maybe there was a role for the AUSA to play there, but I don't think that's what this record supports. Is your agreement to a limited, is that right? What I would say is that if the court finds that there is something unclear in this record that prevents appellate review, that a limited remand would be the appropriate next step. What would be the purpose of the limited remand? To direct the court to clarify and explain whether at the time of sentencing, it understood that it could impose a sentence, in particular, a variant sentence that had not been increased based on an importation enhancement or the imported quality of the methamphetamine involved in this crime. But I don't think, I would not say that I'm proposing that a limited remand has to occur here because as I mentioned, I think the record is sufficiently clear in showing that the court didn't misunderstand its authority. But you're saying that at most, the relief to defendant would be a limited remand. You don't agree with a limited remand, but that would be the best he gets. Yes, your honor. At this time, yes. Because, and I do want to point out that even if the court is unclear about what, go ahead, even if the court is unclear about what the district court believed or how it at this point wouldn't be appropriate first, because there's nothing in this record that suggests that the district court would have gone any lower on this sentence. And to the contrary, I would remind the court that Mr. Phillips was in criminal history category four, and that was even without 12 of his 16 adult criminal convictions contributing a single point to his criminal history score. And I would note that the PSR pointed out the serious risk of harm that he would have by storing things like scales and needles and a jug of GHB in his children's bedrooms. So it was against that. Didn't the district court sentence Phillips to the minimum of the guidelines, right? Yes, your honor. It had adjusted the sentence down by 10 months because of a sentence he had served for relevant conduct. But even then the court said then that Mr. Phillips shouldn't expect to go any lower because using the court's language, there was a argument to be made that his criminal history was underrepresented and that a higher sentence would be justified more likely than a lower sentence. And I would also remind the court that when Mr. Phillips began to advocate for a downward variant sentence at the outset, at the first sentencing hearing, the court at least warned him, hey, I'm going to have a hard time justifying a downward sentence, a downward variance for this defendant. And the court wasn't unclear at all as to why. The court said, I would have a hard time justifying a downward sentence because of two things, the nature of the offense and this defendant's extensive criminal history. So that and the reminder at the second, at the continuation of the hearing when the court heard his additional arguments for a lower sentence, but said, you know, the 10 months is as far as I'm willing to go. My paraphrase, the 10 months is as far as I'm willing to go because there's good argument to be made for a higher sentence. The court here can be satisfied that the district court's sentence would not have been any lower if it had either better understood or better articulated its understanding of its sentencing authority here. And again, if the court remains uncertain on that, as I mentioned, I think a limited remand would be permissible and the most reasonable next step here. I think the appellant is reply brief, even acknowledges that where something is unclear in the record, and I think this court's practice has acknowledged when appellate review simply isn't practically possible because of an ambiguity, a limited remand is an appropriate tool here. I think it's reasonable in any circumstance, but especially in current times, I think that would be preferable in enabling a review and getting clarity rather than instituting resentencing proceedings when it's unclear whether there was even error in the first place. But as I'd said, I don't think the court even needs to reach that point here. The court didn't say that it believed it couldn't vary from the guidelines. It was simply saying that it didn't think it could jettison the guidelines in total, but with respect to the guideline enhancement based on importation, it was showing restraint and didn't consider itself in a better position than the sentencing commission to say whether that enhancement was or was not, as a general matter, an appropriate thing. And for that unless the court has any additional questions, I'll give back the rest of my time. We appreciate the gift. Mr. Cofer? Yes, your honor. First, the government in its brief and argument today is essentially asking the court to adopt a rule creating a presumption of reasonableness at the district court. The government says that the district court believe the sentencing commission was in a better position to evaluate the applicability of this specific guideline. And that's just contrary to the district court's job to evaluate how the guideline under 3553A should apply in this particular case to this defendant, but also to evaluate the guideline overall and how it serves the 3553A factors. And if the district court is going to give a presumption that the sentencing commission is reasonable, well, we're missing a giant part of sentencing, and it also undermines the appellate presumption of reasonableness, not to mention undermines the Sixth Amendment in individualized sentencing. The term bound that the district court did not say it was bound, and using that specific term has been mentioned a few times. But the language of the district court references its lane, its role, and disagreement with counsel's characterization of its authority to disagree and disregard a guideline. I understand you can ascribe different meanings to language, but because the district court repeated and recommitted to this idea, the record is clear. Also, the district court, like I said earlier, makes the record clear because it references being reversed, and it references serifice in trying to wrestle with this idea of a policy disagreement. And that shows that the district court never moved beyond the first step of appropriately calculating the guidelines. Once again, the government has tried to shift the burden for harmless error, telling the court that nothing in the record suggests that the court would give a different sentence. But as pointed out, the sentence was at the bottom of the guidelines, and then there was a departure for the discharge sentence. We don't know because the merits of the variance argument were not addressed. The district court did not wrestle with the merits of the variance argument. So the representation, even if the district court said, I would not give a argument, so we can't know what the district court would have done with the merits of the argument. And presumably, I mean, if the argument is well-founded and the district court agrees with the argument after reaching the merits, it would make the appropriate variance. But as it were, with a limited remand, because the district court made its position clear and the merits were not addressed, the district court never made any kind of findings with regard to the merits of the variance argument. And that's required by Rita and on down that if a particular guideline is objected to by way of variance and is challenged, the district court should make the appropriate findings and address the challenge to the guideline. That wasn't done here because the district court short-circuited the argument. So Mr. Phillips was not able to object to those findings or ask for clarification or try to convince the district court that those findings were inappropriate. And your honor, with regard to the cases such as Burns, in Burns, the district court actually said, it did say that I don't believe I have the discretion, but the district court also said, if I had the discretion, I would not apply it to give a lower sentence in this case. And that case was reversed and remanded because a defendant is entitled to be sentenced by a judge that knows the authority under Kimbrough to vary based on a policy disagreement. And so if the court has no further questions, we ask for a reversal and remand to the district court for a new sentencing year. All right, counsel. Thanks to you both. Good arguments. Help us understand this case. We'll take it under advisement and get you an answer as soon as we can. Thank you, your honor.